UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

JACQUELINE RIZK and SAMIR GONSALVES,

                              Plaintiffs,

            v.

POLICE OFFICER FIRDAUS MEHIRDEL, TAX
REG # 950309, POLICE OFFICER DANNY LEE,
TAX REG # 950736,

                              Defendants.

**MEMORANDUM & ORDER**
14-CV-06434 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

        Plaintiffs Jacqueline Rizk and Samir Gonsalves brought this action against Defendants

Firdaus Mehirdel and Danny Lee for false arrest, excessive force, denial of a right to fair trial

and intentional infliction of emotional distress in violation of 42 U.S.C. § 1983 and New York

state law.  Trial commenced on July 18, 2022.  The Court has already granted Defendants'

motion for judgment as a matter of law pursuant to Rule 50(a) with respect to the claims against

former Defendant Joel Rosenthal, but reserved decision on the remaining claims and sent them to

the jury.  On July 21, 2022, the jury returned a verdict in favor of Plaintiffs with respect to the

claims of excessive force, denial of a right to a fair trial and intentional infliction of emotional

distress ("IIED").  *See* Jury Verdict Sheet, ECF No. 147.  Defendants now renew their motion for

judgment as a matter of law pursuant to Rule 50(b) with respect to all of Plaintiffs' claims

("Motion").  *See* ECF Nos. 151, 154, 158.  For the reasons set forth below, Defendants' Motion

is denied.

## BACKGROUND

The Court assumes familiarity with the background of this case, *see generally Rizk v. City of New York*, 462 F. Supp. 3d 203 (E.D.N.Y. 2020), and only briefly discusses the relevant facts. In the early morning of August 3, 2013, Plaintiffs were at a bar/lounge located on Steinway Street in Astoria, Queens.  *See* Trial Transcript, ECF No. 156 at 283:11–19.  Defendants Mehirdel and Lee, driving a marked patrol car, were flagged down by a black SUV and passerby, alerting them to an argument between a man and woman, later learned to be Plaintiffs Gonsalves and Rizk.  *See* Trial Transcript, ECF No. 155 at 44:7–46:2.  Mehirdel, who was in the front passenger seat of the patrol car, asked Rizk if she was okay, and she replied that everything was fine.  *Id.* at 46:4-12.  Nonetheless, Medirdel and Lee exited the car and, in an attempt to separate Gonsalves from Rizk, Mehirdel ordered Gonsalves to come towards him by gesturing with his hands. *Id.* 47:9–19.  Gonsalves did not comply with this order, which resulted in a confrontation between the parties during which Mehirdel stated Gonsalves struck him.  *Id.* at 47:21–51:7; ECF No. 156 at 294:3–300:19.  Both Plaintiffs were subsequently arrested:  Rizk was arrested at the scene, ECF No. 155 at 50:18–20, and Gonsalves was arrested at the 114th precinct in Astoria, *id.* at 168:4–9.[1]

The trial commenced on July 18, 2022.  The jury heard testimony from Plaintiffs Gonsalves and Rizk, Defendants Mehirdel and Lee, Captain Joel Rosenthal as well as Dr. Oscar Korte, Plaintiff Rizk's therapist.  At the close of evidence on July 19, 2022, pursuant to Rule 50(a), Defendants moved:  (i) to dismiss Captain Rosenthal from the action; (ii) to dismiss all of

---

[1]     At the time of the arrest, Gonsalves was employed as an off-duty detective with the New York City Police Department.  *See* ECF No. 155 at 83:1–4, 156.  Rizk was and currently is employed as a prosecutor in the Queens County District Attorney's Office.  *See* ECF No. 156 at 276:19–278:20.

Plaintiffs' remaining claims including false arrest, excessive force, denial of the right to fair trial, failure to intervene, and intentional infliction of emotional distress; and (iii) for qualified immunity with respect to all of Plaintiffs' claims. The Court granted Defendants' motion with respect to Captain Rosenthal, finding that all remaining counts against him should be dismissed. *See* ECF No. 156 at 365:3–366:5. The Court found that taking all inferences in the light most favorable to Plaintiffs, the jury would not have a legally sufficient basis to find for Plaintiffs as to Captain Rosenthal. *Id.* The Court reserved decision on qualified immunity and Plaintiffs' remaining claims and sent the case to the jury. *Id.* at 364:20–25.

After considering the parties' arguments, the testimony before it, and a video of the incident, the jury determined that: (i) Mehirdel used excessive force against Rizk; (ii) Mehirdel denied Plaintiffs' right to a fair trial and Lee failed to intervene to prevent it; and (iii) Mehirdel intentionally inflicted emotional harm on Rizk. *See* ECF No. 147. The jury found in favor of Mehirdel and Lee as to Plaintiffs' claims for false arrest and Gonsalves' claim of excessive force. *Id.* The jury awarded Gonsalves and Rizk $13,000 and $2,120, respectively, in compensatory damages. *Id.* at 6. The jury further awarded Gonsalves and Rizk each $11,000 in punitive damages. *Id.* at 7. Judgment was entered against Defendants on July 25, 2022. *See* ECF No. 149.

## LEGAL STANDARD

At a jury trial, "[a] court may grant judgment as a matter of law if, after a party has been fully heard on an issue, the court concludes there is no legally sufficient evidentiary basis for a reasonable jury to find for the opposing party on an issue essential to a claim." *Woolfolk v. Baldofsky*, No. 19-cv-3815, 2022 WL 3358081, at *2 (E.D.N.Y. Aug. 15, 2022) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 50(a). "That burden is particularly heavy

where . . . the jury has deliberated in the case and actually returned its verdict in favor of the nonmovant.  In such circumstances, a court may set aside the verdict only if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence of the movant is so overwhelming that reasonable and fair-minded persons could not arrive at a verdict against it." *Fox v. Triborough Bridge & Tunnel Auth.*, 462 F. Supp. 3d 241, 244 (E.D.N.Y. 2020) (citations and internal quotation marks omitted).  In ruling on a motion for judgment as a matter of law ("JMOL"), the court "must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Id.*

## DISCUSSION

### I.     Excessive Force

Defendants argue that the Court should grant a JMOL with respect to Rizk's claim of excessive force because:  (i) it fails as a matter of law, and (ii) Mehirdel is entitled to qualified immunity.  ECF No. 151-1 at 12–22.  For the reasons set forth below, the Court declines to grant Defendants' Motion.

#### A.  Plaintiff Rizk's Excessive Force Claim Does Not Fail as a Matter of Law

"The Fourth Amendment protects individuals from the government's use of excessive force when detaining or arresting individuals.  A police officer's use of force is excessive in violation of the Fourth Amendment if it is objectively unreasonable in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation." *Lawson v. Cnty. of Suffolk*, 920 F. Supp. 2d. 332, 339 (E.D.N.Y. 2013) (internal citations and quotation marks omitted) (alterations in original).

As Defendants point out, Mehirdel was legally entitled to use some degree of force to arrest Rizk, but the reasonableness of the amount of force used is in dispute.  ECF No. 151-1 at

4

20.  "Although [t]he fact that a person whom a police officer attempts to arrest resists, threatens, or assaults the officer no doubt justifies the officer's use of some degree of force, . . . it does not give the officer license to use force without limit.  Instead, the force an officer uses must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer."  *Lee v. City of Troy*, 339 F.R.D. 346, 361 (N.D.N.Y. 2021) (quoting *Sullivan v. Gagnier*, 225 F.3d 161, 165–66 (2d Cir. 2000)) (internal citations and quotation marks omitted) (alterations in original).

"In deciding whether an officer used excessive force, the fact finder must consider the facts and circumstances of each particular case, including:  (1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight."  *Lawson*, 920 F. Supp. 2d at 340 (internal quotation marks omitted). Defendants argue that the video footage and testimony at trial plainly shows that Mehirdel's use of force was reasonable as a matter of law.  ECF No. 151-1 at 22.  However, "[d]rawing all inferences in favor of the non-moving party and giving deference to all credibility determinations of the jury, the Court finds that the [Defendants] ha[ve] not established that the evidence is insufficient to permit a reasonable juror to find in [Plaintiff's] favor."  *Lawson*, 920 F. Supp. 2d at 340 (internal quotation marks omitted).

Defendants' testimony paints a picture in which Rizk "physically involved herself in defendants' attempt to arrest plaintiff Gonsalves," resisted Mehirdel's attempts to place her under arrest, and got out of her handcuffs in the police vehicle—as a result, the force used by Mehirdel was reasonable.  *See* ECF No. 151-1 at 20–22.  However, testimony exists in the record that, if believed by the jury, indicates that:  (i) Mehirdel initiated force against Rizk before she

5

resisted arrest, *see* ECF No. 156 at 300:17–24 ("At one point, he had his hand on my neck and was, like, pushing it down against the car, and he proceeded to handcuff me . . . . Q: Did you hear anyone say you were under arrest before you grabbed?  A: No. I didn't hear anything said before I was grabbed."); (ii) that she tried to alert Mehirdel to her discomfort and was ignored, *see id.* at 300:5–9 ("I was screaming: Please. Please . . . .  My dress is going up . . . and he's like: I don't care. Shut up. Shut up. Just throwing me against the car."); and (iii) and that Mehirdel continued to exert force against Rizk after she was handcuffed, *see id.* at 302:9–12 ("[H]e reached in to the vehicle towards me . . . .  He reaches in and he does, like, a two movement - - like, a lift up and then, like, a throw to the floor.").

Defendants significantly rely on *Rasmussen v. City of New York*, 766 F. Supp. 2d 399 (E.D.N.Y. 2011), a summary judgment decision, to argue that Rizk's excessive force claim should be dismissed as a matter of law.  ECF No. 151-1 at 15–19.  The case differs from the present circumstances in several respects:  (i) the case arises out of a drug arrest where the suspect fled from police, ran into his apartment and hid in a bedroom closet, *Rasmussen,* 766 F. Supp. 2d at 400; (ii) the plaintiff physically interfered in the suspect's arrest more than once, including after she was forcibly removed from the bedroom, *id.* at 404; (iii) the court emphasized that the police officers were in the middle of an operation that involved a "hot-pursuit chase and gun fire, accidental or not," *id.* at 407; and (iv) one of the officer's guns accidentally discharged while in the bedroom which elevated the chaotic nature of the situation, *id.*  In *Rasmussen*, the nature and severity of the crime—as well as the safety of not only the officers, but all others in the apartment—played a role in granting defendants' summary judgment motion on the plaintiff's excessive force claim.  *See id.* at 406.  Viewing the evidence presented at trial here in

the light most favorable to Plaintiffs, a reasonable juror could have concluded that given the circumstances, unlike in *Rasmussen*, the amount of force used by Mehirdel was not reasonable.

Defendants also ask the Court to rely on admissions made by Rizk during her testimony to hold that Mehirdel did not use excessive force to arrest Rizk, *see* ECF Nos. 151-1 at 21–22, 158 at 3, but these do not entitle Defendants to a JMOL.  *See Lawson*, 920 F. Supp. 2d at 340 (denying Rule 50 motion where plaintiff argued that defendants' admissions at trial merited judgment as a matter of law).  The jury reviewed video footage of the incident, heard the testimony of the parties, and decided who to credit.  Even if the Court would have come to a different conclusion than the jury—a matter on which the Court renders no opinion—the Court cannot set aside the verdict because it disagrees with the jury's reasonable assessment of Rizk's testimony.  *See Ekukpe v. Santiago*, 823 F. App'x 25, 30 (2d Cir. 2020) (denying defendants' motion for JMOL and holding that evidence at trial did not compel finding that Defendants' version of events was true).

### B.  Defendant Mehirdel Is Not Entitled to Qualified Immunity on the Excessive Force Claim

"The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."  *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 643 (S.D.N.Y. 2020) (quoting *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994)).  "[W]hen an official raises qualified immunity as a defense, the court must consider whether:  (1) . . . the official violated a statutory or constitutional right, and (2) . . . the right was clearly established at the time of the challenged conduct."  *Jones v. Treubig*, 963 F.3d 214, 224 (2d Cir. 2020) (internal quotation marks omitted).

Here, the first prong of the qualified immunity test—whether defendant violated a statutory or constitutional right—was determined by the jury in this case, which found that Mehirdel used excessive force against Rizk.  *See Jones*, 963 F.3d at 225.  For the reasons described in the previous section, the Court will not disturb the jury's conclusion that a constitutional violation occurred.  The second prong requires the Court to consider "whether a reasonable officer faced with the same factual scenario that [Sergeant Mehirdel] encountered would have known that his use of force was unreasonable."  *Adedeji v. Hoder*, 935 F. Supp. 2d 557, 569 (E.D.N.Y. 2013).  Mehirdel argues that Rizk smacked him on his back, resisted arrest and "tipped over" when she was removed from the vehicle in order to adjust her handcuffs.  *See* ECF No. 155 at 60:9–14, 63–64.  Rizk argues that she extended her arm in Mehirdel's direction but never made contact with him,[2] that he threw her against the car and then subsequently threw her on the ground.  *See* ECF No. 156 at 302, 341, 345.  "Where the circumstances are in dispute, and contrasting accounts . . . present factual issues as to the degree of force actually employed and its reasonableness, a defendant is not entitled to judgment as a matter of law on a defense of qualified immunity."  *See Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotation marks omitted).  The jury found that the force used against Rizk was excessive and there is a material dispute of fact as to whether Rizk made contact with Mehirdel.  Taking the facts in the light most favorable to the nonmoving party, the Court concludes that "no reasonable officer could [have] believe[d]," in these circumstances, that the amount of force Mehirdel used was

---

[2]     Rizk initially stated she was not in physical contact with Merhidel but her arm was extended in his direction, *see* ECF No. 156 at 341:12–13, and when pressed stated that "it seems like there is contact with me and Mehirdel and that his weight is pushing me forward," *see* ECF No. 156 at 342:20–21, but later corrected her testimony insisting that she never made contact with Mehirdel, *see* ECF No. 156 at 345:11–13 ("Q: So you're maintaining that you never made contact with [Mehidel]? A: I know I never made contact with him.").

reasonable. *Jones*, 963 F.3d at 230; *see also Adedeji*, 935 F. Supp. 2d at 569; *see also Mosby v. City of New York*, No. 20-cv-1485, 2022 WL 4095931, at *5 (S.D.N.Y. Sept. 7, 2022) (declining on summary judgment to grant qualified immunity where issues of material fact remained as to whether plaintiff was thrown to the floor without warning); *Jones v. Parmley*, 465 F.3d 46, 63 (2d Cir. 2006) (finding on summary judgment that allegations, if true, that nonviolent individuals were thrown to the ground would preclude qualified immunity).

The conclusion that Defendants are not entitled to qualified immunity on Rizk's excessive force claim is reinforced by Defendants' decision not to submit special interrogatories to the jury. *See* ECF No. 157 at 471:1–16. Those interrogatories could have helped to resolve the factual dispute between the parties as to whether Rizk made contact with Mehirdel. Having "made a strategic choice to forgo submission of such questions to the jury," Defendants cannot argue now that the Court should decide the issue of qualified immunity based on the testimony they believe is most favorable to them. *Outlaw v. City of Hartford*, 884 F.3d 351, 371 (2d Cir. 2018). Instead, the Court must construe all facts not decided expressly by the jury in the light most favorable to Rizk and cannot "usurp the jury's role by substituting its own finding." *Jones*, 963 F.3d at 234–35.

## II.     Denial of a Right to Fair Trial

### A.   *Plaintiffs Denial of a Right to Fair Trial Claims Do Not Fail as a Matter of Law*

"To prevail on a claim for denial of the right to a fair trial, a plaintiff must prove that an '(1) investigation official (2) fabricates information (3) that is likely to influence a jury's verdict, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of life, liberty, or property as a result.'" *Ekukpe*, 823 F. App'x at 30–31 (citing *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016)). Defendants argue that Plaintiffs' claims fail because: (i) Plaintiffs did not introduce evidence at trial to establish that they suffered a post-

9

arraignment deprivation of liberty, *see* ECF No. 151-1 at 11–14; (ii) Plaintiffs did not establish

that the alleged fabrication was the proximate cause of any post-arraignment deprivation of

liberty, *see id.* at 14–16; and (iii) there is no causal basis for Gonsalves to recover the money he

spent on a criminal defense attorney, *id.* at 16–17.

      "When a plaintiff claims that the fabrication of evidence led to separate harms beyond the

deprivation of liberty caused by an arrest, she can prevail even if her arrest was supported by

probable cause." *Mosby*, 2022 WL 4095931, at *7; *see also Garnett*, 838 F.3d at 277 ("The

setting of bail, which may make the difference between freedom and confinement pending trial,

and the prosecutor's decision to pursue charges rather than to dismiss the complaint without

further action, may depend on the prosecutor's and magistrate's assessments of the strength of

the case, which in turn may be critically influenced by fabricated evidence.").

      Defendants argue that there was no evidence that Plaintiffs suffered a post-arraignment

deprivation of liberty, and therefore their claims for denial of the right to a fair trial fail. *See*

ECF No. 151-1 at 11.   However, a reasonable jury could find that Plaintiffs:  (i) did not hit or

strike Mehirdel; (ii) that Mehirdel fabricated that evidence; (iii) that prosecutors would not have

brought all of the charges they did against Plaintiffs but for that fabricated evidence; and (iv) as a

result, Plaintiffs would not have been held for the length of time they were detained. *See*

*Wellner v. City of New York*, 393 F. Supp. 3d 388, 396 (S.D.N.Y. 2019) ("A reasonable jury

could conclude that if [the officer] had not told [the prosecutor] that the plaintiff struck and

injured [the officer] with her vehicle, the plaintiff would not have spent as much time detained at

the precinct and Central Booking.  Therefore, the defendants' argument that the defendant

officers' fabrication of evidence did not cause the plaintiff any deprivation of liberty fails."); *see*

*also Harris v. City of New York*, No. 15-cv-8456, 2017 WL 6501912, at *8 (S.D.N.Y. Dec. 15,

2017) ("[F]abricated evidence may cause a further deprivation if it adversely informs a prosecutor's charging and bail determinations.").  Gonsalves also testified to being suspended without pay for 30 days as a result of the incident, *see* ECF No. 155 at 173:1–9; *see also* ECF No. 155 at 95–98 (describing Gonsalves's fitness for duty report which included language about Gonsalves "push[ing] PO Mehirdel").  It is not unreasonable for a jury to also conclude that but for the fabrication of evidence, Gonsalves would not have been suspended.

Moreover, Defendants' argument that Plaintiffs did not establish that the fabrication at issue was the proximate cause of the purported deprivation equally fails.   "[A] police officer's submission of false information to a prosecutor may in itself serve as a proximate cause of the deprivation of a criminal defendant's right to a fair trial and deprivation of liberty." *Torres v. City of New York*, No. 20-cv-4007, 2022 WL 955152, at *10 (E.D.N.Y. Mar. 30, 2022) (citing *Shabazz v. Kailer*, 201 F. Supp. 2d 386, 398 (S.D.N.Y. 2016)).  Drawing all reasonable inferences in Plaintiffs' favor, it was reasonable for the jury to conclude that the fabricated evidence that was forwarded to prosecutors substantially contributed to Plaintiffs' deprivation of liberty and property.   Rizk specifically testified about how the criminal complaint—which contained the fabricated evidence—likely affected the decision to prosecute Plaintiffs' case.  *See* ECF No. 156 at 354:14–355:2 ("A: So with failure to prosecute . . . [prosecutors] usually just take the cops word because we assume they're going to be truthful. . . .  [W]e rely on what they say to write up the criminal court complaint.  Now if there is . . . a videotape at the time we write up the complaint. . . then we could . . . decline to prosecute [in that] moment.  In this case, there was no video given at the time of the criminal court complaint, it was given after, so the dismissal came afterwards.").  Accordingly, the Court denies Defendants' Motion on this claim.

### B.  Plaintiffs' Failure to Intervene Claims Do Not Fail as a Matter of Law[3]

"Although [i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence, an officer may not be held liable unless he had a realistic opportunity to intervene to prevent the harm from occurring." *Ekukpe*, 823 F. App'x at 32. Defendants argue that "no reasonable juror could find that defendant Lee observed and/or had reason to know that defendant Mehirdel fabricated material evidence and forwarded that evidence to prosecutors." ECF No. 151-1 at 18.  The jury heard testimony from Lee that suggests he forwarded information to prosecutors containing the fabricated material evidence, knew that it was going to be used in the complaint, and therefore had the opportunity to intervene but failed to do so. *See* ECF No. 155 at 121:6–15 ("I believe I wrote [in my memo book] that [Gonsalves] hit my partner . . . .  Q: So you realize that when you prepare a memo book, that's one of the police documents that is going to the District Attorney's Office; is that correct? A: Yes.").  It is not unreasonable for the jury to conclude that Lee had an opportunity to correct the information in his memo book. *See Douglas v. City of New York*, 595 F. Supp. 2d 333, 345 (S.D.N.Y. 2009) ("Whether an officer was personally involved in a constitutional violation, or whether he can be held liable on a failure to intervene theory, is generally a question of fact for the jury to decide.").

---

[3]      Defendants argue that because Plaintiffs fail to substantively oppose Defendants' arguments as to this issue, or only mention it "briefly," Plaintiffs' failure to intervene claims should be dismissed as to Defendant Lee.  ECF No. 158 at 4.  As the moving party, Defendants bear the "heavy burden" on a Rule 50 motion. *Fox*, 462 F. Supp. 3d at 244.  Accordingly, the Court declines to dismiss the jury's verdict on account of Plaintiffs' counsel's failure to substantively address arguments in opposition to Defendants' motion on the failure to intervene claim.

### III.     Intentional Infliction of Emotional Distress

Under New York law, the "tort of intentional infliction of emotional distress has four elements:  (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996); *see also* Final Jury Instructions, ECF No. 148 at 35.  At summary judgment, the Court found that "[a]lthough some district courts have observed that false accusations of criminal conduct generally do not rise to the level of extreme and outrageous conduct that is necessary to support an IIED claim, other district courts have allowed IIED causes of action to proceed for the making of false reports . . . and for plotting to make, and making of, false statements about the conduct of a plaintiff."  ECF No. 90 at 36–37 (citations and internal quotation marks omitted).

Defendants argue that, in light of the jury's finding that there was probable cause for arrest, "any claim of distress stemming from the arrest itself must now fail."  ECF No. 151-1 at 31.  The Court disagrees and finds that whether Defendants' conduct was "sufficiently outrageous to satisfy the conduct of the emotional distress tort" was an issue of fact for the jury to decide because of the conflicting testimony about whether:  (i) Plaintiffs assaulted Mehirdel; (ii) any subsequent use of force was excessive; and (iii) whether Mehirdel initiated false charges against Plaintiffs.  *Bender*, 78 F.3d at 791.  The jury reviewed video footage of the incident and was presented with evidence of alleged excessive force.  *See supra*; ECF No. 156 at 299:20–22 ("And [Mehirdel] got up and he threw me against the car.  I have never been thrown against a car in my life like that, let alone by a police officer.").  As discussed previously, the jury was also presented with evidence of alleged fabricated testimony, *supra*.  Rizk herself testified to her distress as linked to the fabrication of charges and her prosecution.  *See* ECF No. 156 at 316:1–6 ("I was thinking and fearing the worst, that I would be fired. . . .  The criminal court complaint

that was submitted by Officer Mehirdel [sic] going to be the demise of my career.").   Moreover, contrary to Defendants' assertion, Dr. Korte's testimony "linked . . . [Rizk's] distress to a fabrication of evidence."  ECF No. 151-1 at 31; *see* ECF No. 156 at 262:3–8 ("[The PTSD] came to be a problem, for instance, in the discovery part of where the ADA questions the police about what happened.  She would sometimes have a hard time believing them, wanted to believe them but wondered are they telling the truth because her police report, I was told, is far different from what actually happened in the event.").  Accordingly, the Court cannot conclude that "there is no legally sufficient evidentiary basis for a reasonable jury" to find for Plaintiff Rizk on her IIED claim.  *Woolfolk*, 2022 WL 3358081, at *2 (internal quotation marks omitted).

## IV.    Punitive Damages

The jury awarded Plaintiffs a total of $37,120 in damages:  (i) Gonsalves and Rizk were awarded $13,000 and $2,120, respectively, in compensatory damages; [4] and (ii) $11,000 each in punitive damages.  ECF No. 147 at 6–7.   With respect to punitive damages, the jury awarded each Plaintiff $5,500 from each Defendant.  *Id.* at 7.  Gonsalves's punitive damages award was therefore 15% less than his compensatory damages, although Rizk's punitive damages award was slightly more than five times her compensatory damages.

As with other forms of damages, determining the amount of punitive damages "is a quintessential responsibility of juries," which should not be set aside unless the jury's decision "shock[s] the conscience or amounts to a miscarriage of justice."  *Jennings v. Yurkiw*, 18 F.4th 383, 389–90 (2d Cir. 2021) (internal quotation marks omitted) alteration in original).  "The

---

[4]      Gonsalves testified that he was suspended as a result of the arrest and "lost a month of pay, which is $8,000" and had to hire a lawyer which cost him $5,000.  *See* ECF No. 156 at 402:21–23.  Dr. Korte testified that Rizk paid him a co-pay of $20 for each therapy session over the span of six years (initially once or twice week, later other week and then eventually once a month).  *See* ECF No. 156 at 259:16–23, 265:11.

purpose of punitive damage awards is to punish the defendant and to deter the defendant and others from engaging in similar conduct in the future.  The decision to award punitive damages is a discretionary moral judgment made by the jury."  *Cruz v. Henry Modell & Co., Inc.*, No. 05-cv-1450, 2008 WL 905356, at *8 (E.D.N.Y. Mar. 31, 2008) (citations and internal quotation marks omitted).  However, punitive damages must be "reasonable" and "rational in light of their purpose to punish what has occurred and to deter its repetition."  *Cruz*, 2008 WL 905356, at *8 (citing *Pac. Mut. Life Ins. Co. v. Haslip*, 499 U.S. 1, 21 (1991)).  To determine the reasonableness of a punitive damages award, courts consider the "(1) degree of reprehensibility of the defendant's conduct, (2) relationship of the punitive damages to the compensatory damages, and (3) criminal and civil penalties imposed by the state's law for the misconduct in question."  *Jennings*, 18 F.4th at 390.

Defendants have challenged only the first of these factors—the degree of reprehensibility of their conduct.  They contend that the jury's finding of punitive damages should be vacated because no reasonable jury could find that Mehirdel "acted with evil motive or intent or with reckless or callous indifference to [Rizk's] federally protected rights."  *See* ECF No. 151-1 at 32; *see also Adedeji*, 935 F. Supp. 2d at 571 ("[P]unitive damages may be awarded where the jury finds that the acts of the defendant were done . . . with reckless or callous disregard for the rights of the injured person.") (internal quotation marks omitted).

The jury could have reasonably concluded that Defendants acted with "reckless or callous disregard," a finding supported by the jury's determination that Defendants denied Plaintiffs the right to a fair trial, and that Mehirdel used excessive force and intentionally inflicted emotional harm against Rizk.  ECF No. 147; *Adedeji*, 935 F. Supp. 2d at 571.  Although Defendants focus on Mehirdel's state of mind when using force to arrest Plaintiffs, *see* ECF No. 151-1 at 32, the

15

jury was entitled to consider the totality of Defendants' conduct related to all of the claims on which Plaintiffs prevailed at trial.  As discussed previously, the evidence presented at trial was sufficient to support the jury's findings on each of the aforementioned claims.  Notably, the jury was entitled to account for Defendants' "fabricated evidence" and/or "false accounts" of Plaintiffs' arrest when deciding the punitive damages award.  *Jennings*, 18 F.4th at 391 (affirming award of punitive damages against police officers in Section 1983 case).

Defendants have not addressed the other factors relevant to the propriety of punitive damages, but the jury's award withstands scrutiny under those criteria as well.  Even Rizk's punitive damages award of approximately five times her compensatory damages is similar to an award that the Second Circuit recently affirmed in a Section 1983 case and is less than awards other courts have allowed in such cases.  *Jennings*, 18 F.4th at 391–92 ("Given the constellation of intentional misbehavior by the officers, we see nothing untoward about the 1:4 ratio between compensatory and punitive damages."); *see also Anderson v. Osborne*, No. 17-cv-539, 2020 WL 6151249, at *8 (S.D.N.Y. Oct. 20, 2020) ("[T]he ratio between the punitive and compensatory damages awards (7.67:1) does not shock the judicial conscience.") (internal quotation marks omitted); *Shepherd v. Fischer*, No. 08-cv-9297, 2018 WL 3122053, at *7 (S.D.N.Y. June 26, 2018) (upholding award of $1 in nominal damages and $20,000 in punitive damages). Accordingly, the Court declines to vacate the jury's finding of punitive damages.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion is denied.

SO ORDERED.

_/s/ Hector Gonzalez_
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
        October 5, 2022

17